W. J. CONWILL ET AL. *v.* J..B. LIVINGSTON- ET AL.

1. EXECUTORS AND ADMINISTRATORS. *Liability. Laches.*
   An administrator is nothing but a trustee bound for the care and caution of an ordinarily watchful man and nothing more. Where ·by inattention or sloth he loses a debt he is liable; unless this be shown, he is not.

2. SAME. *Duty as to enrolling judgment. Secreted property of debtor.*
   No duty rests on an administrator to enroll a judgment in a county where, at the time, the debtor owns no property, merely because by so doing and then filing his bill he might finally subject secreted property to the judgment.

3. SAME. *Failure to enroll judgment. Secreted property of debtor.*
   Where a judgment debtor has fraudulently conveyed his property before the rendition of judgment, it is essential to fix the liability of an administrator for failure to enroll judgment in the county where such property lies, to show that he knew, or ought to have known, the fraudulent nature of the conveyance.

4. SAME. *Reduction of claim to judgment. Nulla bona returns. Presumption.*
   When an administrator has promptly reduced a claim to judgment and has had repeated returns of *nulla bona* on. the *fi. fas.* issued, he has a right to treat the claim as worthless in the absence of anything to show that he had notice or suspicion of a fraudulent conveyance prior to his judgment.

APPEAL from the Chancery Court of Itawamba County.
HON. L. HAUGHTON, Chancellor.

In 1863 J. G. Conwill was appointed administrator of the estate of J. J. Livingston, deceased, by the Probate Court of Itawamba County. In July, 1868, said administrator filed his account of final settlement in said estate, and at the August term, 1868, said court granted a decree approving said final account and discharging the administrator. J. G. Conwill died in 1879, and in February, 1880, appellees, as heirs of said J. J. Livingston, deceased, filed their petition against appellants as executors of said J. G. Conwill, praying that they be required to file for their testator an account of final settlement in the estate of J. J. Livingston, deceased. The decree discharging said J. G. Conwill as administrator of said estate in his lifetime being held void for lack of a guardian *ad litem,* his executors (appellants) were ordered to pre-

sent, and accordingly did present, an account of final settlement of
their testator's administration of said estate.   Appellees excepted
to said final account, alleging that said administrator was charge-
able, among other debits, with a certain judgment against G. W.
Stovall by reason of negligence.   The facts alleged as constituting
the negligence may be stated as follows:

J. G. Conwill as administrator obtained judgment in the Circuit
Court of Itawamba County against G. W. Stovall on the 12th day
of March, 1867, which judgment was properly enrolled in Ita-
wamba County on the 27th day of March, 1867.   On the same
day, but after the rendition of judgment in the case of J. G. Con-
will, administrator, against G. W. Stovall, a judgment was ren-
dered in the case of John Buckley against said G. W. Stovall.
This judgment was enrolled in Itawamba County on the 13th day
of March, 1868.   At the date of these judgments G. W. Stovall
owned six quarters of land in that part of Itawamba County after-
ward taken to constitute Lee County, but had, on or about the 24th
of December, 1866, conveyed these lands to his brother-in-law,
Archibald McDonald, for the purpose of defrauding his creditors.
G. W. Stovall remained in possession of the land, which was about
six miles from the residence of J. G. Conwill.  Just before the ren-
dition of these judgments in Itawamba County the county of Lee
was organized, including the residence of G. W. Stovall in that
part of its territory taken from Itawamba County.   An act of the
legislature provided that all judgments afterward rendered on suits
then pending in Itawamba or Pontotoc against any citizen of Lee
County should be enrolled in Lee, as provided by law, within three
months from their rendition, and such enrollment should entitle
the judgment creditor to the same rights as if the county of Lee
had not been organized.   J. G. Conwill failed to have his judg-
ment against G. W. Stovall enrolled in Lee County, but the Buck-
ley judgment was enrolled in that county on August 16, 1867,
after the expiration of the three months allowed by statute.   On
the 7th day of April, 1867, a *fi. fa.* had been issued on the Conwill
judgment to Itawamba County, and on the 7th day of May, 1867,
an alias *fi. fa.* was issued to Lee County.  Both of these writs were

duly received by the sheriffs of the respective counties and by them returned indorsed, "No property found." Conwill, deeming this judgment against Stovall worthless on account of the insolvency of the judgment debtor, sold the judgment, with the other insolvent claims of said estate, at public outcry on the 27th day of July, 1868. J. V. Thomas, becoming the purchaser, had the judgment enrolled in Lee County. This sale was reported to the Probate Court of Itawamba County, and the sale and report were confirmed at the August term of said court, 1868. Subsequently executions were issued on the Conwill and Buckley judgments and levied upon the lands, and J. Robins, as attorney for Buckley, purchased them at sheriff's sale for the sum of one hundred and forty-two dollars. J. Robins, who had ascertained through a friend confidentially some facts showing fraud in the sale, filed his bill in chancery against G. W. Stovall and A. McDonald, to have the conveyance from Stovall to McDonald decreed fraudulent and void and his own deed from the sheriff freed from all cloud of title crea'ed by such conveyance. Robins afterward sold the lands back to G. W. Stovall for one thousand dollars, and, at Stovall's request, made a quit-claim deed to Catherine Smith, a sister-in-law of the said G. W. Stovall, thus leaving the legal title to these lands in Catherine Smith. In the Circuit Court of Lee County, on May 11, 1868, P. A. Knowles obtained a judgment against G. W. Stovall for the sum of eight thousand five hundred and sixty-six dollars and twenty-one cents, which judgment was enrolled in Lee County June 13, 1868. Houston and Reynolds bought the judgment of Knowles and filed his bill in chancery and had the conveyance from J. Robins to Catherine Smith decreed fraudulent and void and the Knowles judgment declared to be a lien on the lands. A commissioner was appointed and the lands were sold for eleven hundred and sixty dollars.

On the hearing the Chancellor sustained the exceptions and granted a decree charging the administrator with the full amount of the judgment against Stovall, with interest thereon at ten per cent. per annum from its rendition, from which decree an appeal was taken.

*Newnan Cayce,* for appellants.

1. The appellees claim that the negligence of the administrator consists in his failing to have the judgment enrolled in Lee County, and that if he had had it so enrolled in proper time the judgment would afterward have been saved to the estate by virtue of priority of lien. If this omission occasioned any loss to the estate, then the loss must have occurred before the sale of the judgment by the administrator, for after the sale the estate had no interest in the judgment; it was owned by Thomas. This sale occurred on the 27th day of July, 1868, and up to that time its enrollment would have been of no possible advantage; it would only have been an additional expense to the estate. The appellees have not attempted to show nor do they claim that the enrollment would have enabled the administrator to have saved the judgment or any part *until long after the sale.* The administrator would not have been justified, with the light before him, to have expended any money further in the prosecution of a claim apparently so worthless. His information was that the deed conveying the lands was *bona fide.*

2. The lien of an enrolled judgment attaches only upon property owned by defendant. It could not attach to this land during the time before the sale, because the title was then and for long afterward in McDonald. It was never divested out of McDonald until by decree in the case of *Houston & Reynolds* v. *Catherine Smith et al.,* rendered in July, 1872, which decree seems to have been taken rather by agreement. These proceedings all originated in and were conducted by Mr. J. Robins, who alone had information justifying such proceedings. But for his " confidential friend " nothing of the sort would have been done. The administrator sold the judgment and was discharged in 1868. On the 2d of March, 1871, Knowles sells his judgment against Stovall for about ten thousand dollars to Houston & Reynolds for five hundred dollars and a release of his fee. It is not required that administrators shall be of prophetic ken—that they shall be able to know and foretell the events of the future. If they are to be held liable for present acts by reason of future events which no man could foretell, then certainly no *discreet* man would accept such a trust.

3. Appellees claim that they should at least receive the proceeds of the first sale of land; but they are not entitled to it, because the estate had no interest in the judgment at that time. This sale of land occurred in May, 1869, while the judgment was sold in July, 1868.

4. The administrator in all his dealings acted in utmost good faith, with all possible diligence in attempting to collect the judgment, and in the disposal of it did not violate the trust reposed in him in any way, but faithfully, honestly, and, with the lights before him, prudently and discreetly discharged its obligations. It is not a case which invites the doctrine of "Shylock," but, on the contrary, commends itself to the favorable consideration of the court.

*L. Brame,* on the same side, argued orally and in writing.

1. We rely confidently on the merits of this case. The Chancellor, in holding the administrator liable for the full amount of this judgment with interest at the rate of ten per cent. for nearly seventeen years, imposed a rule of liability entirely too rigid and severe. Schouler on Ex. and Admrs., § 316 ; *Berry* v. *Parkes,* 3 S. & M. 625 ; *Thompson* v. *Brown,* 4 John. Ch. R. 629 ; *Gray* v. *Lynch,* 7 Gill (Md.) 431; *Taylor* v. *Benham,* 5 How. (U. S.) 233; *Keller's Appeal,* 8 Pa. St. 288.

2. Was it negligence in the administrator not to enroll this judgment in Lee County, or, rather, did he not exercise all the diligence that an ordinarily prudent man would have exercised in his own affairs under similar circumstances? The judgment debtor was insolvent and heavily indebted. His means had been swept away by the results of the war, and he had conveyed away his lands. The administrator employed competent counsel and reduced the claim to judgment, and had execution issued to both Itawamba and Lee Counties successively, and these were returned no property found. In general, it is considered a sufficient protection to an attorney-at-law or other trustee in such a case that he has sued, recovered judgment, and had execution issued and placed in the hands of the collecting officer, and that this officer, whose duty it is to make the money, has officially returned that he is unable to do so, or that no property of the defendant can be found. Was the

administrator guilty of negligence, or, as counsel say, òf gross neg-ligence, because of the isolated fact that the judgment was not enrolled in Lee County? Surely he was not. We must not view this as an isolated fact, but must consider it in connection with all the facts and circumstances in the case. Why enroll the judg-ment in Lee County? The administrator had been reliably in-formed that the defendant had no property in that county. Why not say that it was negligence *per se* on the part of the administra-tor not to enroll the judgment in Monroe or Tishomingo or Chick-asaw County? It might have turned out, as the result of subse-quent events, that something could have been made in and of those counties. If it can be said that any interest liable to execution was found in Lee County, it was wholly by the light of subsequent events, facts that turned up afterward, which the administrator did not know and could not anticipate.

3. We submit that the administrator's liability is to be measured by the rule of ordinary diligence and not by the success of Colonel Robins, who, under peculiar circumstances, exercised perhaps un-usual and extraordinary diligence. And we submit, too, that it is not the duty of an attorney or an administrator or other trustee charged with the collection of a debt, after obtaining judgment and placing an execution in the hands of the sheriff, to constitute him-. self a collecting officer or detective to hunt up property that may have been conveyed away fraudulently.

*Blair, Clifton & Eckford,* for appellees.

The liability of the administrator in this case, as in all others, must be determined by the fact, to be ascertained from the whole .case, whether the debt was lost to the estate by the negligence of the administrator or not. An administrator is liable for negligence, and he is bound to exercise the same diligence and attention to the business he has voluntarily assumed which discreet men bestow on their own business. *Berry* v. *Parkes et al.,* 3 S. & M. 639; *Bailey* v. *Dilworth,* 10 S. & M. 409; *Banks* v. *Machen,* 40 Miss. 260; *Klein* v. *French,* 57 Miss. 662. Anything short of such diligence amounts to negligence, and if a loss occurs to the estate from negligence of the administrator he is bound to make it good. We think we can

in one short sentence point to the act of negligence in this case which resulted in the loss of the Stovall claim to the estate—the failure on the part of the administrator to have the judgment enrolled in the county of Lee. Why obtain a judgment? The object is to subject the property of the defendant to payment of the debt, to acquire liens which will prevent the debtor from disposing of his property. The whole machinery of the law is but a means for the accomplishment of this object. Then to put this machinery into operation at an expensive cost, and just before we have accomplished our object to stop short and fail or refuse to take the last, the least, but the most important step toward securing the fruits of our labor and money is negligence of the grossest character. At the sale in 1872 these lands brought eleven hundred and sixty dollars. If the administrator had enrolled this judgment in Lee County the proceeds of this sale would have been applied to our judgment. The prior judgment lien, if it had been preserved, could not have been displaced, but could have been summarily enforced by motion to the court for an application of the fund or to be made a party to the bill for purpose of enforcing our lien against the land. It was the administrator's duty to have enrolled the judgment in Lee County, and his failure to do so resulted in a loss of his prior judgment lien, and consequently a loss of the debt, and hence he must account for it. It may be said that if the administrator had enrolled the judment in Lee County the facts of the case would have been different, and perhaps such as to have foiled the administrator in the collection of the debt. Granting to them that such may have been the case, yet it could not possibly affect this question. We have shown that it was an act of negligence on the part of the administrator not to enroll the judgment in the county of Lee, and that as a necessary consequence of such negligence there was lost to this estate the proceeds of the sheriff's sale of 1869 and the proceeds of the commissioner's sale of 1872. A clearer case of liability has never been presented by the books. *Klein* v. *French*, 57 Miss. 63.

CHALMERS, J., delivered the opinion of the court.

This is an attempt sixteen years after the death of an administrator

to make his estate liable for failing to enroll a judgment in the proper county, whereby it is claimed that another creditor obtained precedence over him. .Neither judgment was obtained in the county of defendant's residence at the time of sale, nor did the property lie there, though it is admitted that shortly after the formation of the new county into which the defendant was legislated an act was passed whereby both judgments might have been enrolled there. At the date of the rendition of the judgment the defendant had no property anywhere, having before that time conveyed to another all that he had subject to levy.

Some years after the date of the judgments, which were rendered on the same day, the lawyer, in Buckley's judgment, received a hint that the conveyance made by the judgment defendant was fraudulent. He thereupon had his judgment enrolled, filed a bill to vacate the conveyance, and, having sold the land, ultimately obtained his money. The claim here is that if the administrator had first enrolled his judgment he would have obtained his money. This claim rests upon the assumption that an administrator must enroll his judgment in a county where at the time the defendant owns no property, because by so doing and then filing his bill he may finally subject secreted property to his judgment. Ultimately, therefore, the contention is that an administrator is liable wherever by filing a bill he can reach assets which have been fraudulently conveyed after the debt and before judgment.

We deny the proposition. An administrator is nothing but a trustee bound for the care and caution of an ordinarily watchful man, and nothing more. Where by inattention or sloth he loses a debt he is liable, unless this be shown he is not. It is not shown in this case that he knew or had reason to believe that anything could be made by filing a bill. He was under no obligation to do so until something occurred to excite his suspicion. Nothing of that sort is here shown. An attorney or agent who obtains a claim for collection and who has nothing to put him on inquiry certainly is not bound to file a bill to vacate fraudulent conveyances, and clearly is not bound to enroll a judgment in counties where the defendant owns nothing, as shown by the records, or in the case of

personal property where there is no possession. Though other persons knew of the fraudulent conveyance in this case it is not shown that the administrator knew it or ought to have known it. Such showing was essential to the maintenance of the exceptions in this case.

The administrator, having promptly reduced the claim to judgment and having had repeated returns of *nulla bona* on the *fi. fas.* issued, had the right to treat the claim as worthless in the absence of anything to show that he had notice or suspicion of the fraudulent conveyance before his judgment.

The exact point has not been decided here or elsewhere, so far as we are advised, but such seem to be the analogies of the law. *Berry* v. *Parks*, 3 S. & M. 625; *Baily* v. *Dilworth*, 10 S. & M. 404; *Smith* v. *Hurd*, 8 S. & M. 682.

*Let the decree be reversed, exceptions be overruled, and petition remanded.*